1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                        **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   NAVIGATORS SPECIALTY INSURANCE                    CASE NO. 3:12-cv-1611-GPC-JMA
     COMPANY,
12                                                     **ORDER:**
                                         Plaintiff,
13                                                     **(1) GRANTING DEFENDANT**
                                                       **CRMBC'S MOTION TO STAY**
14            vs.
                                                       **(2) DENYING DEFENDANT**
15                                                     **CHSI'S MOTION TO DISMISS**

16   CHSI OF CALIFORNIA, INC., et al.,                 **(3) DISMISSING PLAINTIFF'S**
                                                       **MOTION TO STRIKE**
17                                       Defendant.
                                                       [DKT. NOS. 3, 9, 25]
18

19

20            On August 28, 2012, Defendant California Restaurant Mutual Benefit Corp. ("CRMBC") filed

21   a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt.

22   No. 3.)   On August 29, 2012, Defendants CHSI filed a motion to dismiss Plaintiff's complaint

23   pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 9.) On September 25, 2012, Plaintiff

24   filed an ex parte motion to strike Defendants' notice of joinder. (Dkt. No. 25.) On February 1, 2013,

25   the Court held a hearing on these pending motions.  For the reasons set out below, the Court hereby

26   **GRANTS** Defendant CRMBC's motion to stay, **DENIES** CHSI's motion to dismiss, and

27   **DISMISSES** Plaintiff's motion to strike.

28

**I. BACKGROUND**

On or around September 16, 2004, California Restaurant Mutual Benefit Corporation ("CRMBC") entered into a Management Services Contract with CHSI for the performance of underwriting services.  CRMBC is an organization formed by a group of related California businesses to operate a group workers' compensation self-insurance fund that pools compensation liabilities and provides a common benefit delivery system for its members.  CHSI was hired by CRMBC as a business experienced in the management and operation of self-insured groups.  On March 28, 2012, CRMBC filed a lawsuit in the Superior Court of California against CHSI and others, alleging breach of contract and other claims.  Prior to the initiation of the lawsuit, CHSI on July 8, 2011, provided notice to their insurer Navigators Specialty Insurance Company ("Navigators") of the potential claim by CRMBC.  After initial review, Navigators agreed to treat the July 8, 2011 letter as notice of a potential claim under the policy agreement.  On April 17, 2012, Navigators advised that it would provide CHSI with a defense in the CRMBC action, subject to a complete reservation of rights, including the right to withdraw from the defense and/or seek reimbursement.

On July 28, 2012, Navigators filed this insurance coverage lawsuit, seeking declaratory judgment regarding no duty to defend or indemnify; applicable limit of liability; and other provisions that may bar or limit coverage. (Dkt. No. 1.)  In particular, Navigators seeks judgment that there is neither coverage for, nor a duty to defend, the Defendant/Insured CHSI under the Policy agreement in connection with the underlying state court action <u>California Restaurant Mutual Benefit Corporation v. CHSI of California, Inc.</u>, et al., 37-2012-00052274-CU-BC-NC. (the "CRMBC Action.")

Pending before this Court are two motions to dismiss.  In the first-filed motion to dismiss, CRMBC seeks an order to dismiss Navigators' claim or in the alternative an order to stay until the underlying liability action is fully adjudicated. (Dkt. No. 3.)  CRMBC first asserts that Navigators' complaint fails to state a claim or proper ground upon which a declaratory judgment can or should be granted under the Declaratory Judgment Act, 28 U.S.C. § 2201 & 2202 ("DJA"), and therefore the action is entitled to dismissal under FRCP 12(b)(6).  CRMBC asks the Court to decline to

1   exercise its permissive declaratory judgment jurisdiction over Navigators' action because it

2   "conflicts with and turns on facts and other issues that are necessarily at issue and will be resolved

3   in the Underlying Action...[which] renders Navigators' declaratory action neither necessary nor

4   proper at this time." (Dkt. No. 3)  CRMBC further asserts that dismissal is warranted because

5   Navigators action is the product of improper forum shopping, the action will not dispose of the

6   entire action or legal disputes between the parties, and the underlying action touches on substantial

7   and important issue of state public and regulatory policy. (Dkt. No. 3 at 1-3.)  Defendant CHSI

8   filed a motion to join Defendant CRMBC's motion to stay. (Dkt. No. 18.)

9          Defendant CHSI subsequently filed a motion to dismiss, echoing many of the allegations

10  made by CRMBC. (Dkt. No. 9.)  In particular, CHSI contends that Navigators must establish that

11  no potential coverage exists for the CRMBC Action in order to obtain declaratory relief for no duty

12  to defend.  That determination relies upon the adjudication of facts and law in the underlying

13  action. CHSI further asserts that Navigators failed to ascertain a declaration that it had no duty to

14  defend prior to the underlying action taking place, and therefore is precluded to obtaining a

15  determination of no duty to defend.  Lastly, CHSI outlines the areas of factual overlap between this

16  case and the underlying CRMBC Action, and asserts the underlying action is a "parallel state court

17  action involving the same issues and parties."  Accordingly, CHSI requests the Court decline to

18  review Navigators' claim for declaratory relief.

19

20  **The "CRMBC Action"**

21         It is undisputed that this insurance coverage dispute arises out of allegations in the

22  underlying state court action that the Insured/Defendant CHSI failed to properly manage and

23  operate a self-insured workers compensation group (CRMBC) by charging insufficient rates to

24  members.  According to CRMBC's state court complaint, Defendant John Kalb, CHSI's chief

25  underwriting officer, was responsible for accepting and rejecting applications for workers

26  compensation coverage on behalf of CRMBC and setting rates for members in accordance with

27  guidelines established by CHSI and CRMBC.  (Dkt. No. 1, Ex. 3, "CRMBC Complaint.")  Mr.

28  Kalb performed these duties on behalf of CHSI, who was appointed as CRMBC's Administrator.

Pursuant to the terms of the Management Services Agreement, CRMBC authorized CHSI to "manage the daily operations of the mutual benefit group and to accept and underwrite applications from applicants to the Program," in addition to act as the manager of CRMBC's business with various authority regarding the compensation policy coverage. (Id.)

CRMBC alleges that CHSI breached the terms of the Management Services Agreement by failing to properly underwrite CRMBC accounts and applications for workers compensation coverage, resulting in a substantial deficit of over $4 million.(Id.)  As a result of this alleged mismanagement, the California Office of Self-Insurance Plans performed a special audit of CRMBC that revealed deficiencies in the CRMBC group fund from 2005-2011.(Id.)  Based on these allegations, CRMBC asserts four counts against CSHI for breach of written contract, negligent supervision and training, negligent misrepresentation, and breach of fiduciary duty.

**Navigators' Complaint**

As a result of the underlying CRMBC action, Plaintiff/Insurer Navigators has brought this action seeking declaratory judgment that it is under no duty to indemnify Defendant/Insured CSHSI in the CRMBC action.  In it's first claim, Navigators asserts that CHSI is not entitled to coverage under the Policy because CHSI failed to establish the condition precedent necessary to trigger coverage.  Navigators asserts that the insurance Policy established, as a condition precedent, that no Insured had a basis to believe prior to the inception date of the first policy issued on July 12, 2009, that "any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim."  (Dkt. No. 1 at 10.)  Navigators asserts that CHSI and Mr. Kalb were "aware of acts or omissions that might reasonably be expected to be the basis of a claim. Specifically, beginning at least as early as January 2009, Kalb and/or CHSI knew that they were charging rates for worker's compensation insurance on behalf of CRMBC that were lower than the rates that the CRMBC Board of Trustees had approved." (Id.)  In short, Navigators claims that CHSI knew that their acts on behalf of CRMBC would result in the basis of a claim. Since CHSI knew of these actions prior to the inception date of the policy issued by Navigators on July 29, 2012, then the entire CRMBC Action claim is exempt from coverage.

Navigators further alleges that the policy agreement does not cover claims that arise out of professional services performed if the Insured was "an owner, partner, member, director, officer or employee" of the entity for which it performed services. (Dkt. 1, Ex. A, "Policy Agreement.") Navigators asserts that CHSI and its Chief Executive Officer Jim Leftwich, "operated and managed CRMBC and/or was a director, officer or employee of CRMBC." Thus, the professional services are not covered under the Policy agreement. Lastly, in the event that the Court determines that Navigators has a duty to defend or indemnify, Navigators seeks to limit liability. First, Navigators seeks to limit liability to $2 million in connection with the CRMBC Action. In the alternative, Navigators seeks to limit the policy coverage in whole or in part based other grounds detailed in the policy coverage that prohibit the types of damages that CRMBC seeks in its action.

**Insurance Policy**

The insurance policy issued by Navigators to CHSI on July 12, 2009 is an errors and omissions insurance policy with a limit of liability of $2 million for each claim. The policy obligates Navigators to pay sums in excess of the $25,0000 deductible that CHSI becomes legally obligated to pay:

> as damages and claim expenses as a result of a claim first made against the Insured and reported in writing to the Company during the policy period or Extended Reporting Period, by reason of an act or omission including personal injury in the performance of professional services by the Insured or by someone for whom the Insured is legally responsible, provided that: 1) Such act or omission was committed on or subsequent to the retroactive date...; and 2) Prior to the inception date of this policy and if continuously renewed, no Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to the basis of a claim.

The policy does not provide coverage for claims:

> [b]ased on or arising out of professional services performed for or by any business enterprise not named in Item 1. In the Declarations if on or after the date or time of the act or omission giving rise to such claim: 1) Any Insured controlled, owned, operated or managed such entity; or 2) Any Insured was an owner, partner, member, director, officer or employee of such entity. Control of or ownership in a business enterprise is presumed if any Insured owned or held 25% or more of the equity and/or debt instruments of such enterprise.

Professional services is defined as "financial risk management, business consulting,

and notary services.  Furthermore the policy does not apply to any claim:

> based upon or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an Insured. The Company will provide the Insured with a defense of such claim unless and until such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission has been determined by any final adjudication, finding of fact or admission by the Insured...and the Company will have the right to seek recovery of the defense costs incurred from the Insured found to have committed the acts or omissions.

(Dkt. No. 1, Ex. A)

## II. STANDARD OF REVIEW

The federal Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declarations, whether or not further relief is or could be sought."  28 U.S.C. §§ 2201(a) (emphases added).  Accordingly, once jurisdiction is established, it is always discretionary with the Court whether to entertain an action for a declaratory judgment. Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 112, 82 S. Ct. 580, 582, 7 L. Ed. 2d 604 (1962); Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494, 62 S. Ct. 1173, 1175, 86 L. Ed. 1620 (1942).  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995).  The Court may refuse to give such relief if the declaratory relief would not settle the controversy between the parties. Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321 (C.C.A. 4th Cir. 1937); Williams v. Ball, 294 F.2d 94 (2d Cir. 1961), cert. denied, 368 U.S. 990, 82 S. Ct. 598, 7 L. Ed. 2d 526 (1962).

The Ninth Circuit has elaborated on the *Brillhart* factors articulated by the Supreme Court as to when declaratory relief is appropriate.  "In deciding whether to entertain action under Declaratory Judgment Act, district courts should avoid needless determination of state law issues, discourage litigants from filing declaratory actions as means of forum shopping, and avoid duplicative litigation." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998).

The pendency of a state court action alone does not require a district court to refuse federal declaratory relief.  Rather, "if there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." Id. citing Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366–67 (9th Cir.1991). The Supreme Court has counseled district courts to "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.  This may entail inquiry into the scope of the pending state court proceeding and the nature of defense open there." Brillhart, 316 U.S. 112.  In addition, the Ninth Circuit has acknowledged several additional factors relevant to the analysis:

> The Brillhart factors are not exhaustive.  We have suggested other considerations, such as 'whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

Dizol, 133 F.3d at 1225 n.5.

In the insurance context, when an insurer brings a declaratory relief action in the district court to determine its obligation to defend or indemnify its insured, while a state court action to resolve the same issue of coverage between the same parties is pending, a stay or dismissal of the declaratory relief action is proper. Wilton, 515 US. At 283; Aetna Casualty & Surety Co. V. Merritt, 974 F.2d 1196, 1199 (9th Cir. 1992).  The fact that the issues are not identical or one party in the federal action is not a party in the state action does not, however, preclude the court from issuing a stay. Polido v. State Farm Mutual Auto Ins. Co., 110 F.3d 1418, 1423 (9th Cir., 1997) (overruled on other grounds in Dizol, 133 F.2d 1220).  "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." Dizol 133 F.3d at 1225.

**III. DISCUSSION**

It is undisputed that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332. Navigators' claim is a dispute between an insurer and an insured over the duties to defend an indemnify.  This type of dispute has been held to satisfy the "case and controversy" requirement for purposes of the Declaratory Judgment Act, whether or not there is an underlying state court action pending.  American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994); Aetna 974 F.2d at 1199.  Accordingly, the Court considers whether it should exercise its discretion to decline jurisdiction over this matter, or stay it pending resolution of the underlying state court litigation.

Defendants contend that the coverage action will be duplicative of the underlying CRMBC action, as there is substantial overlap of the factual and legal issues that must be adjudicated in CRMBC action prior to resolution of the present coverage claim.  In short, Defendants contend that the CRMBC Action is a "parallel action with the same issues and same parties," and therefore fails to satisfy the first factor of the *Brillhart* test.  Navigators accurately notes that it is not a party to the CRMBC action, nor is insurance coverage an issue in the underlying case.  However, an exact or precise identity of issues between the federal and state action is not required to support dismissal of a declaratory action.  Allstate Ins. Co. v. Mercier, 913 F.2d 273, 278-79 (6th Cir. 1933).

The question for the Court is whether Navigators' coverage obligations can be determined independently of the adjudication of the CRMBC Action.  If, however, Navigators' coverage turns on factual issues that are in dispute in state court, a dismissal or stay of the request is appropriate. Am. States Ins. Co. V. Canyon Creek, 786 F.Supp. 821, 824-25 (N.D.Cal.1991) ("To decide whether coverage exists under the applicable policies, the Court merely must determine whether the allegations in the complaints in the state court actions, *even if accepted as true*, give rise to coverage under the policies at issue.  In ruling one way or another on this issue, the Court is in no way reaching the merits of the underlying complaints.")

The Court turns to Navigators' first claim, which contends that the policy excludes coverage for claims that existed prior to the inception of the policy agreement on July 9, 2012 (the "Prior Knowledge Condition").  Navigators asserts that CHSI and/or John Kalb are not entitled to coverage under the policy because the basis of the CRMBC action arises out of a claim which

1  CHSI had "knowledge beginning at least as early as January 2009 [that] Kalb and/or CHSI knew

2  [sic] they were charging rates for worker's compensation insurance on behalf of CRMBC that were

3  lower than the rates that the CRMBC Board of Trustees had approved."  CHSI's knowledge that

4  their actions would be the basis of a claim, although previously undisclosed, existed prior to the

5  inception of the policy agreement.  Navigators contends that the CRMBC claim is therefore

6  excluded under the "Prior Knowledge Condition," and Navigators has no duty to defend CHSI in

7  the underlying state court action.  Defendants counter that the factual issue of whether CHSI and/or

8  John Kalb knew that they were undercharging worker's compensation claims is at the heart of the

9  CRMBC action.  Indeed, the underlying CRMBC complaint alleges that CHSI "failed to perform

10  its obligations under the contract in that it failed to perform underwriting duties adequately and

11  charge sufficient rates." (CRMBC Complaint at 13.)

12         To assess Navigators' first claim, this Court would need to make two factual

13  determinations.  First, the Court would need to determine what CHSI and/or Kalb knew prior to the

14  inception date at issue, and, second, whether such knowledge would have been basis to believe that

15  a claim might be made.  CRMBC asserts in it's opening brief that the Court must look at the

16  subjective intent of CHSI and/or Mr. Kalb to determine the ultimate coverage question.  In reply,

17  Navigators pleads that the Court utilize a reasonable person standard, which would preclude any

18  subjective test that would need to take place in the underlying action.  *See* Weddington v. United

19  Nat'l Ins. Co., 346 F. App' x 224, 2126 (9th Cir. 2009) (ruling on a coverage defense as a matter of

20  law where "the use of the phrase 'or could have reasonably foreseen' indicates that coverage is

21  excluded where a claim was foreseeable from a reasonable, objective viewpoint.").  At this time,

22  the Court will refrain from asserting whether a subjective or objective test is required to determine

23  the claim. *See* Indian Harbor Ins. Co. v. Meridiian Comm., Inc., No. C 06-655, 2007 WL 951282

24  (N.D. Cal. Mar. 27, 2007.) ("the question of whether an objective or subjective test applies to this

25  kind of prior knowledge provision has not been clearly settled by California courts.")  Regardless

26  of the type of test used to determine the claim, it remains that there are certain factual issues that

27  overlap in both cases.  To assess CRMBC's breach of contract claim, the state court will need to

28  determine if CHSI and/or John Kalb failed to adequately perform their underwriting services

1   according to the terms of the contract.  This requires a determination of the existence of an

2   agreement, any violations between the parties of the agreement, and damages.  To determine

3   whether CHSI violated the terms of the contract, the state court will need to inquire as to what the

4   parties knew regarding the performance of services during the contractual period.  In the present

5   coverage claim, this Court will also need to determine whether CHSI and Mr. Kalb performed

6   professional services for CRMBC, and what CHSI and Mr. Kalb knew about the performance of

7   those services that could have lead to the basis of a claim.  Accordingly, there is factual overlap

8   between these two cases as to the knowledge that CHSI and Mr. Kalb had regarding the

9   performance of their underwriting services to CRMBC.

10          The Court turns to Navigators' second claim to further assess whether there is significant

11   overlap between the two cases to warrant dismissal or stay.  As detailed by the insurance policy

12   above, Navigators asserts that policy coverage does not extend to claims that are based upon or

13   arise out of services performed for a business enterprise if any insured "operated or managed" the

14   business enterprise, or any insured was a "director, officer or employee" of such enterprise (the

15   "Business Enterprise Exclusion").  In its' complaint, Navigators' cites CRMBC's website, which

16   states that Jim Leftwich is "the founder and CEO of CHSI, the program administrator for the

17   CRMBC...[and] Jim was asked to serve on the [CRMBC] Board of Trustees by other members

18   because of his broad experience and expertise." (Dkt. No. 1 at 5.)  The question of whether CHSI's

19   claim is precluded under the policy based on the Business Enterprise Exclusion has no factual

20   connection to any of the claims in the underlying CRMBC Action.  Nowhere in CRMBC's

21   complaint or in any of the briefings do the Defendants' assert that the CRMBC Action requires a

22   finding of fact that Jim Leftwich either "operated or managed" CRMBC or that he was a CRMBC

23   "director, officer or employee."  The Court therefore finds no overlap between the two cases

24   regarding Navigators' second claim.

25          Navigators third and fourth claims are broadly based on an interpretation of the policy

26   agreement.   The third claim seeks to limit coverage based on the policy that "any claim based in

27   whole or in part on any act or omission...in the performance of professional services committed

28   prior to December 13, 2010, then each claim limit of liability is $2 million." (Dkt. No. 1 at 12.)

The factual issue to be determined here is whether or not CHSI actions were performed prior to December 13, 2010.  The CRMBC complaint alleges that CRMBC and CHSI entered into their contractual agreement on or around September 2004, and that CHSI set rates and issued distributions between 2005 and 2011. (CRMBC Complaint at 12.)  CRMBC's Complaint, if taken to be true, therefore sufficiently states the facts needed to determine the limited liability issue in question, and the Court could make this determination without any inquiry into the adjudication of the CRMBC Action.  Navigators' fourth claim seeks to further limit coverage for the CRMBC Action based in whole or in part by other "potentially applicable provisions of the policy."  Again, this claim largely turns on the interpretation of the policy language.

Having reviewed Navigators' four claims, the Court finds but one area of necessary factual overlap with the underlying CRMBC action.  The similarity, however, is in Navigator's first and primary coverage claim, which largely turns on the facts in the underlying state court action. Defendants contend that even if there are only a few similarities, that the cases are "parallel because they both arise out of the same factual transaction."  (Dkt. 9 at 15.)  Defendants rely on the Ninth Circuit decision in Employers Reinsurance Corporation v. Karussos, 65 F.3d 796, 800 (9th Cir. 1995) (overruled on other grounds by Dizol, 133 F.3d at 1227).   In this case, the Ninth Circuit held the district court abused its discretion in asserting jurisdiction over a declaratory judgment action that involved only state law questions of insurance coverage and was brought during pendency of related state court proceedings.  Id.  The Court relied on the *Hungerford* rule that courts should "'decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court' unless there are 'circumstances present to warrant an exception to that rule." Id. at 798, quoting American National Fire Insurance Co. V. Hungerford, 53 F.3d 1012, 1019 (9th Cir. 1995).

In Karussos, the Ninth Circuit found that courts should invoke the *Hungerford* rule even when there are only some similar issues among the two actions.  Similar to this case, in Karussos, the Insurer brought a complaint seeking declaratory judgment in federal district court under the premise that the Insurer had a duty to defend the Insured.  Karussos, 65 F.3d at 800.  The issue of the duty to defend turned on factual questions that overlapped with those at issue in the underlying

1   state court litigation. <u>Id</u>.   In remanding the case, the Ninth Circuit reminded courts that concerns of

2   "'practicality' and 'wise judicial administration' generally counsel against the exercise of federal-

3   court jurisdiction over claims for declaratory relief that involve only state law questions and are

4   brought during the pendency of a related state court proceeding." <u>Id</u>. at 801, referencing

5   <u>Hungerford</u>, 53 F.3d 1012 and <u>Continental Cas. Co. V. Robsac Indus.</u>, 947 F.2d 1367, 1374 (9th

6   Cir. 1991).  Here, there are only questions of state law before the Court, and it remains undisputed

7   that the case relates to the underlying state court action.  Accordingly, the Court finds it sufficient

8   to find that the underlying state court action, while not precisely the same, is sufficiently related to

9   the present case to weigh in favor of withholding jurisdiction at this time.

10          The Court next considers the second *Brillhart* factor which seeks to discourage parties from

11   using federal declaratory judgment actions as a means of forum shopping. <u>Dizol</u>, 133 F.3d at 1225.

12   Bringing a separate insurance claim in district court alone does not constitute improper forum

13   shopping.  The only evidence suggesting forum shopping is that Navigators filed the district court

14   action following the CRMBC state court action, possibly as a reactionary measure.  As articulated

15   by the Ninth Circuit in <u>Robsac</u>, improper forum shopping relates to "the defensive or reactive

16   nature of a federal declaratory judgment suit, and...if a declaratory judgment suit is defensive or

17   reactive, that would justify a court's decision not to exercise jurisdiction."  <u>Robsac</u>, 947 F.2d at

18   1371-1372 (internal citation omitted).  Here, there are certain signals that indicate Navigators filed

19   the present lawsuit as a tactical advantage.  First, Navigators filed the present litigation only four

20   months after CRMBC filed the underlying state court action.  Defendant CRMBC accurately points

21   out that Navigators seeks an improper procedural advantage by litigating the coverage defenses "on

22   the basis of a barren record."  At the time of the filing of the motions to dismiss, the CRMBC state

23   court lawsuit had been stayed pending arbitration between the parties, and the discovery period was

24   in the nascent phases. (Dkt. No. 3, Ex. A.)  Second, Navigators does not have an ability to

25   intervene in the underlying state court action; however, it does have state court remedies following

26   the resolution of the lawsuit.  Navigators fails to directly respond to these concerns.  Nor does

27   Navigators entertain the proposition that it has available state court remedies to resolve its

28   coverage action in the future on the basis of a more fully developed record.  Accordingly, and due

1   to caution articulated by the Supreme Court regarding forum shopping, the Court finds that

2   Navigators seeks an improper advantage by seeking declaratory relief in this Court.

3          The Court further considers whether Navigators' action would constitute duplicative

4   litigation, and additionally whether the resolution would fully resolve the legal questions at issue

5   between the parties.  Similar to the question as to overlap of factual and legal issues detailed above,

6   the Court finds that there would necessarily be duplicative questions of fact that would need to be

7   determined in the present litigation.  In particular, Navigators' first claim requires determining

8   whether CHSI and/or Mr. Kalb knew that their actions could be the basis of a claim.  Resolving

9   these questions to determine the issue of insurance coverage, however, will not fully resolve the

10  legal questions at issue between the parties.  Even assuming *arguendo* that the Court were to

11  dismiss Navigators' first claim due to overlap, and render judgment on the last three claims - the

12  factual and legal issues between the remaining parties would still exist in the underlying state court

13  action.  Furthermore, if the Court were to proceed with all of Navigators' claims, the Insured,

14  CHSI, could be required to take inconsistent positions in the two actions in terms of what

15  knowledge it had and when it had the knowledge regarding alleged mismanagement of CRMBC's

16  account.  Courts have held that regardless of factual overlap, prejudice to the insured occurs when

17  it is forced to fight a "two front war."  Great Am. Ins. Co. v. Sup. Ct., 178 Cal. App. 4th 221, 271

18  (2009).  As such, the declaratory relief action will not resolve all of the coverage issues among the

19  parties, and further could result in unfair prejudice against the insured, CHSI.  It therefore remains

20  within the Court's discretion not to take up this action.  Dizol, 133 F.3d at 1225.

21

22  **IV. CONCLUSION**

23         The Court finds that Navigators' action has sufficient factual overlap with the underlying

24  state court action, Navigators' attempt to bring this action before the Court constitutes a reactive

25  filing, and the adjudication of Navigators' case could result in duplicative judgments that would

26  violate the principles of judicial efficiency and potentially result in unfair prejudice against the

27  insured.  Although these factors may warrant dismissal, if the pending state court action is settled

28  between the parties, then the risks articulated above would be greatly minimized if not fully

1    eliminated. A stay of declaratory relief action pending resolution of the third party suit is therefore

2    appropriate. *See* Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287 (Cal. 1993).

3        The Court exercises its' authority to **STAY** Navigators' claim. Accordingly, the Court

4    hereby **GRANTS** Defendant CRMBC's motion to stay, **DENIES** Defendant CHSI's motion to

5    dismiss, and **DISMISSES** Plaintiff's motion to strike Defendant CHSI's motion to join as **MOOT**.

6    (Dkt. Nos. 3, 9, 25)

7        Having so held, the Court hereby **VACATES** the hearing date scheduled for May 10, 2013

8    on Plaintiff's motion for summary judgment. The Court further **ORDERS** Defendants CRMBC

9    and CHSI to file a status report with this Court every four months regarding the state court action.

10   The first status report is therefore due to the Court on or before June 3, 2013.

11   **IT IS SO ORDERED.**

12

13   DATED: February 4, 2013

14

15                                 HON. GONZALO P. CURIEL
                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28